UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

LIZA CHOI,

        Plaintiff,      **Case No. 17 Civ. 3518
(ADS)(SIL)**

    -against-

FERRELLGAS, INC. and MICHAEL
GUADAGNO,

        Defendants.

-------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

*/s/ Brendan M. Quinn*

Brent N. Coverdale    (*pro hac vice*)
Brendan M. Quinn    (*pro hac vice*)
SCHARNHORST AST KENNARD GRIFFIN, P.C.
1100 Walnut Street, Suite 1950
Kansas City, Missouri 64106
Office:    (816) 268-9400
Facsimile:   (816) 268-9409
Email:    bcoverdale@sakg.com
       bquinn@sakg.com

     and

David Greenhaus   NY # 2931921
JACKSON LEWIS, P.C.
58 South Service Road, Suite 250
Melville, New York 11747
Office:    (631) 247-0404
Facsimile:   (631) 247-0417
Email:    GreenhausD@jacksonlewis.com

*Attorneys for Defendants Ferrellgas, Inc. and
Michael Guadagno*

**TABLE OF CONTENTS**

| Section | Page(s) |
|---|---|
| **TABLE OF AUTHORITIES** | iv-vii |
| **PRELIMINARY STATEMENT** | 1 |
| **SUMMARY JUDGMENT LEGAL STANDARD** | 3 |
| **ARGUMENT AND AUTHORITIES** | 4 |
| **I. Choi Lacks Sufficient to Establish a Prima Facie Case of FMLA Retaliation.** | 5 |
| A. Choi Lacks Sufficient Evidence Demonstrating that She Was Asked to Stay Home for Two Weeks with Pay and Subsequently Transferred from her Import Manager Position for Exercising Rights Under the FMLA. | 5 |
| 1. Choi lacks sufficient evidence to show that she suffered an adverse employment action. | 5 |
| a. Choi being asked to stay home for two weeks with pay is not an adverse employment action. | 6 |
| b. Choi's transfer from the Import Manager position to a new position is not an adverse employment action. | 6 |
| 2. Choi lacks sufficient evidence to show that the circumstances give rise to an inference of retaliation. | 7 |
| a. Choi lacks a direct showing of retaliatory animus. | 8 |
| b. Choi lacks sufficient evidence showing disparate treatment. | 8 |
| c. Choi lacks evidence of temporal proximity. | 8 |
| d. Choi lacks sufficient evidence of any other circumstance that could give rise to an inference of retaliatory intent. | 9 |
| 3. Ferrellgas had legitimate, non-retaliatory reasons for asking Choi to stay home for two weeks with pay and then transferring her into a new position and Choi lacks any evidence of pretext. | 10 |

B.    Choi Lacks Sufficient Evidence Demonstrating that Ferrellgas Eliminated her Position for Exercising Rights Under the FMLA.    13

    1.    Choi lacks sufficient evidence to show that the circumstances give rise to an inference of retaliation.    14

        a.    Choi lacks a direct showing of retaliatory animus.    14

        b.    Choi lacks sufficient evidence of disparate treatment.    14

        c.    Choi lacks evidence of a sufficient temporal relationship.    14

C.    Ferrellgas Had a Legitimate, Non-retaliatory Reason for Eliminating Choi's Position and Choi Lacks Sufficient Evidence That This Reason Was Pretextual.    15

**II.    Choi Lacks Sufficient Evidence for a Reasonable Jury to Find that Ferrellgas Unlawfully Discriminated Against Her in Violation of Title VII and the New York State Human Rights Law.**    17

A.    Choi Lacks Sufficient Evidence to Show that Ferrellgas Asked Her to Stay Home With Pay for Two Weeks and Subsequently Transferred Her To a New Position Because of Her Gender or Pregnancy.    18

    1.    Choi lacks sufficient evidence showing that she suffered an adverse employment action.    18

    2.    Ferrellgas had a legitimate, non-discriminatory reason for asking Choi to stay home for two weeks with pay and then transferring her into a new position upon her return.    18

B.    Choi Lacks Sufficient Evidence to Show that Ferrellgas Eliminated Her Import Operations Expense Auditor Position Because of Her Gender or Pregnancy.    19

    1.    Choi was not a member of the protected class for purposes of her pregnancy discrimination claim at the time her position was eliminated.    19

    2.    Choi lacks sufficient evidence to show that her RIF occurred under circumstances giving rise to an inference of discrimination.    20

    3.    Ferrellgas had legitimate, non-discriminatory reasons for eliminating Choi's position and Choi lacks sufficient evidence to show that those reasons were pretextual.    21

**III.** **Choi Lacks Sufficient Evidence for a Reasonable Jury to Find that Ferrellgas Unlawfully Retaliated Against Her Because She Exercised Rights Protected by Title VII and the New York State Human Rights Law.** 21

    A.    Choi Lacks Sufficient Evidence to Show That Her Import Operations Expense Auditor Position Would Not Have Been Eliminated But For Any Complaints of Pregnancy Discrimination. 22

        1.    Choi lacks sufficient evidence of a causal connection between her complaint and her job elimination. 22

            a.    Choi lacks any direct evidence of retaliatory animus. 22

            b.    Choi lacks evidence of disparate treatment. 22

            c.    Choi lacks evidence of a sufficient temporal relationship. 23

    B.    Ferrellgas Had Legitimate, Non-Retaliatory Reasons for Eliminating Choi's Import Operations Expense Auditor Position and Choi Lacks Sufficient Evidence to Show that those Reasons were Pretextual. 23

**IV.** **Choi's Claims Against Michael Guadagno Fail As a Matter of Law Because She Lacks Sufficient Evidence to Show An Underlying Claim for Discrimination or Retaliation.** 23

**CONCLUSION** 24

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                    PAGE(S)

*Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York*,
    107 F. Supp. 3d 323 (S.D.N.Y. 2015)................................................................7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)......................................3

*Bain v. Highdale Hotels, LP*,
    No. 08 Civ. 3263 (BMC), 2009 WL 10705912 (E.D.N.Y. July 7, 2009) .................18, 19

*Banigo v. Bd. of Educ. of Roosevelt Union Free Sch. Dist.*,
    No. 06-4792, 2009 WL 577974 (E.D.N.Y. Mar. 4, 2009)...................................4

*Bennett v. Hofstra Univ.*,
    842 F. Supp. 489 (E.D.N.Y. 2012) ............................................................21, 22

*Briggs v. Women in Need, Inc.*,
    819 F. Supp. 2d 119 (E.D.N.Y. 2011) .............................................................19

*Bruder v. Jewish Bd. of Family & Children Servs.*,
    No. 10-CV-5951, 2013 WL 789231 (E.D.N.Y. Mar. 4, 2013)............................7

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)..................................6

*Bush v. Fordham Univ.*,
    452 F. Supp. 2d 394, 410 (S.D.N.Y. 2006).....................................................8

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)....................................3

*Chamberlin v. Principi*,
    247 F. App'x 251 (2d Cir. 2007) .................................................................23

*Clark Cty. Sch. Dist. v. Breeden*,
    532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)..................................9

*Dawson v. Cty. of Westchester*,
    373 F.3d 265 (2d Cir. 2004).........................................................................4

*Fraser v. Fiduciary Trust Co. Intern.*,
    No. 04 Civ. 6958, 2009 WL 2601389 (S.D.N.Y. Aug. 25, 2009) .......................6

*Galabya v. New York City Bd. of Educ.*,
    202 F.3d 636 (2d Cir. 2000)........................................................................5, 6

*Gallo v. Prudential Residential Servs., L.P.*,
    22 F. 3d 1219 (2d Cir. 1994)..............................................................................15

*Garrett v. Garden City Hotel*,
    No. 05-CV-0962, 2007 WL 1174891 (E.D.N.Y. Apr. 19, 2007) ........................9

*Helmes v. S. Colonie Cent. Sch. Dist.*,
    564 F. Supp. 2d 137 (N.D.N.Y. 2008) ..............................................................19

*Holcomb v. Iona College*,
    521 F.3d 130 (2d Cir. 2008)...............................................................................4

*Ingenito v. Riri USA, Inc.*,
    No. 11-CV-2569, 2013 WL 752201 (E.D.N.Y. Feb. 27, 2013) ........................19

*Keller v. Great Lakes Collection Bureau, Inc.*,
    No. 02-CV-0719, 2005 WL 2406002 (W.D.N.Y. Sept. 29, 2005) ...............19, 20

*Kelly v. Huntington Union Free Sch. Dist.*,
    No. 09-CV-2101, 2012 WL 1077677 (E.D.N.Y. Mar. 30, 2012).......................7

*Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*,
    862 F. Supp. 2d 311 (S.D.N.Y. 2012).................................................................9

*LaSalle v. City of New York*,
    13-CV-5109, 2015 WL 1442376 (S.D.N.Y. Mar. 30, 2015).............................22

*Lucas v. S. Nassau Cmtys. Hosp.*,
    54 F. Supp. 2d 141 (E.D.N.Y. 1998) .................................................................17

*Malena v. Victoria's Secret Direct, LLC*,
    886 F. Supp. 2d 349 (S.D.N.Y. 2012)................................................................24

*Maxton v. Underwriter Labs., Inc.*,
    4 F. Supp. 3d 534 (E.D.N.Y. 2014) ...................................................................15

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)......................................4

*Morris v. Lindau*,
    196 F.3d 102, 110 (2d Cir. 1999)........................................................................5

*Morrissey v. Symbol Techs., Inc.*,
    910 F. Supp. 117 (E.D.N.Y. 1996) ...................................................................17

*Petrisch v. HSBC Bank USA, Inc.*,
    No. 07-CV-3303, 2013 WL 1316712 (E.D.N.Y. Mar. 28, 2013)..............................23, 24

*Piantanida v. Wyman Ctr., Inc.*,
    116 F.3d 340, 342 (8th Cir. 1997) ..................................................................20

*Potenza v. City of New York*,
    365 F.3d 165 (2d Cir. 2004)...........................................................................5

*Quaratino v. Tiffany & Co.*,
    71 F.3d 58 (2d Cir. 1995)..............................................................................19

*Quarless v. Bronx-Lebanon Hosp. Ctr.*,
    228 F. Supp. 2d 377 (S.D.N.Y. 2002)...............................................................8

*Ragusa v. Malverne Union Free Sch. Dist.*,
    652 F. Supp. 2d 275 (E.D.N.Y. 2009) ..............................................................6

*Risco v. McHugh*,
    868 F. Supp. 2d 75 (S.D.N.Y. 2012).............................................................8, 9

*Ruhling v. Tribune Co.*,
    No. 04 Civ. 2430, 2007 WL 28283 (E.D.N.Y. Jan. 3, 2007)...............................9

*Saenger v. Montefiore Med. Ctr.*,
    706 F. Supp. 2d 494 (S.D.N.Y. 2010)..............................................................10

*Skates v. Incorporated Vill. of Freeport*,
    265 F. Supp. 2d 222 (E.D.N.Y. 2017) ..............................................................4

*Solomen v. Redwood Advisory Co.*,
    183 F. Supp. 2d 748 (E.D. Pa. 2002) ..............................................................20

*Sowemimo v. D.A.O.R. Security, Inc.*,
    43 F. Supp. 2d 477 (S.D.N.Y. 1999).................................................................17

*Spiegel v. Schulmann*,
    604 F.3d 72 (2d Cir. 2010)..............................................................................17

*Stetson v. NYNEX Serv. Co.*,
    995 F.2d 355 (2d Cir. 1993).............................................................................17

*Tarshis v. Riese Org.*,
   211 F.3d 30 (2d Cir. 2000)...........................................................................4

*Vernon v. Port Auth. of N.Y. & N.J.*,
   No. 95 Civ. 4594, 2002 WL 1072225 (S.D.N.Y. May 22, 2002).......................4

*Wooding v. Winthrop Univ. Hosp.*,
   No. 16-cv-4477, 2017 WL 2559942 (E.D.N.Y. June 12, 2017).........................4

*Zann Kwan v. Andalex Grp.*,
   737 F. 3d 834 (2d Cir. 2013)........................................................................22

**STATUTES**

42 U.S.C. § 2000e(k) ...................................................................................19

N.Y. Exec. Law § 296(6) ..............................................................................23

## PRELIMINARY STATEMENT

Plaintiff Liza Choi ("Choi") began working for Mr. Bar-B-Q as an import coordinator in August 2004 and was promoted to Import Manager in April 2005. (SOF, ¶ 1). In March 2013, Choi's employment transitioned to Ferrellgas, Inc. ("Ferrellgas") after it acquired Mr. Bar-B-Q. (SOF, ¶ 2). Choi worked in Ferrellgas's Melville, New York office. (SOF, ¶ 3). Choi supervised a staff of four full-time and two variable-time employees in the Import Department. (SOF, ¶ 5). By June 2013, Choi began to directly report to Michael Guadagno ("Guadagno"), Vice President of Operations for Blue Rhino Global Sourcing, a division of Ferrellgas. (SOF, ¶ 4).

To Guadagno, Choi's management style was very difficult to manage through and had been going on since he started supervising her. (SOF, ¶¶ 15, 16). Her behavior got to the point where Guadagno feared Ferrellgas would lose employees under her supervision. (SOF, ¶¶ 43-45, 47, 58). If Ferrellgas lost employees during its busy season, the Import department "wouldn't have been able to function." (SOF, ¶ 48). By December 2015, Guadagno believed Choi was well aware of his concerns about her interactions with others yet she was unable or unwilling to change them. (SOF, ¶ 46). Guadagno then decided to reassign Choi to another role. (SOF, ¶ 51). Choi was 33 weeks pregnant at the time. (SOF, ¶ 59).

On December 18, 2015, Guadagno met with Choi in his office with Mary Lentz, Director of Employee Relations, participating by telephone. (SOF, ¶¶ 52-53). At this meeting, Guadagno reiterated concerns about how Choi managed people and interacted with others. (SOF, ¶ 54). Guadagno gave Choi a Performance Improvement Plan informing her she would no longer be the Import Manager. (SOF, ¶¶ 55-56). Ferrellgas also implemented a "cooling off" period and asked Choi to stay home for two weeks with full pay while the team transitioned its personnel. (SOF, ¶ 56).

Choi returned on January 6, 2016. (SOF, ¶ 65). Guadagno envisioned a hybrid role for Choi that included logistics and expense audit duties. (SOF, ¶ 66). Guadagno believed this position would allow Choi to capitalize on her experience with Ferrellgas. (SOF, ¶ 80). He planned for Choi to start focusing on the expense portion and collect data, but this lasted a day or two before she went into labor and on FMLA leave. (SOF, ¶¶ 66, 68). While on FMLA leave, Choi wrote a memorandum questioning the timing of her transfer. (SOF, ¶¶ 74-75). Choi returned from her FMLA leave on April 1, 2016. (SOF, ¶ 76). Upon her return, Choi received a job description and formal title for the position Guadagno created. (SOF, ¶¶ 77-78).

By 2016, Ferrellgas was experiencing a severe company-wide financial crisis prompting layoffs in every division and its corporate headquarters. (SOF, ¶¶ 85, 88). Between roughly 100 to 150 Ferrellgas employees—including at least two employees in the Melville office other than Choi—were subject to a reduction-in-force ("RIF") in 2016. (SOF, ¶¶ 93, 98). Guadagno participated in forecasting discussions to finalize the office budget. (SOF, ¶ 90). After exhausting all other expense opportunities, Guadagno realized that payroll cuts needed to be made. (SOF, ¶¶ 94-96). While Guadagno intended Choi's new position to be permanent, it was not necessary to perform day-to-day operations and Guadagno decided to make it part of Ferrellgas's RIF. (SOF, ¶¶ 91, 96, 97, 100). The Import Operations Expense Auditor Position Choi was performing was eliminated on May 20, 2016. (SOF, ¶ 104).

Choi now brings retaliation and discrimination claims on account of her pregnancy and FMLA leave. Regarding Choi's allegations that she was asked to stay home for two weeks and removed from the Import Manager position, she cannot establish a prima facie case of FMLA retaliation or Title VII/NYSHRL discrimination (Counts I, II, and IV) because she lacks sufficient evidence of an adverse action or an inference of retaliatory intent. Even if Choi could

establish a prima facie case, Ferrellgas had a legitimate reason for its actions and Choi lacks evidence that this reason (Choi's confrontational behavior and interactions towards others) was pretextual.

Regarding Choi's allegations that Ferrellgas ended her employment because she took FMLA leave, she cannot establish a prima facie case of FMLA retaliation (Count I) because she lacks sufficient evidence that the circumstances give rise to such an inference. Regarding Choi's allegations that Ferrellgas did this in retaliation for complaining about pregnancy discrimination or because of her pregnancy, she cannot establish a prima facie case of Title VII/NYSHRL retaliation (Counts III and V) because she lacks evidence that she was a member of the protected class (because she was no longer affected by her pregnancy), or that Ferrellgas would not have eliminated her position but for her engagement in protected activity. Even if Choi could establish her prima facie case, Ferrellgas eliminated her position for a legitimate reason and Choi lacks evidence that this reason (Ferrellgas's financial difficulties) was pretextual. Finally, Choi cannot establish a prima facie "aiding and abetting" case against Guadagno (Counts IV and V) because she lacks sufficient evidence of underlying discriminatory or retaliatory conduct. Ferrellgas and Guadagno are entitled to summary judgment on each of Choi's claims.

## SUMMARY JUDGMENT LEGAL STANDARD

At the summary judgment stage, the movant has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case where it has the burden of proof, then summary judgment is appropriate. *Id*. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The mere existence of a

scintilla of evidence supporting the nonmoving party's position is not sufficient—there must be evidence in which the jury could reasonably find for that party. *See Dawson v. Cty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

## ARGUMENT AND AUTHORITIES

The Second Circuit analyzes each of Choi's claims under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See, e.g., Skates v. Incorporated Vill. of Freeport*, 265 F. Supp. 3d 222, 240 (E.D.N.Y. 2017) (FMLA retaliation); *Wooding v. Winthrop Univ. Hosp.*, No. 16-cv-4477, 2017 WL 2559942, at *9 (E.D.N.Y. June 12, 2017) (discrimination and retaliation under Title VII and the NYSHRL).

Pursuant to *McDonnell Douglas*, the plaintiff has the initial burden of proving her prima facie case. *Id*. If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, non-discriminatory (or non-retaliatory) reason for its actions. *Id*. "Any stated reason is sufficient; the employer need not persuade the court that the proffered reason was the actual reason for its decision." *Tarshis v. Riese Org.*, 211 F.3d 30, 36 (2d Cir. 2000). If the defendant meets this burden, the presumption of animus completely "drops out of the picture." *Vernon v. Port Auth. of N.Y. & N.J.*, No. 95 Civ. 4594, 2002 WL 1072225, at *2 (S.D.N.Y. May 22, 2002) (internal citations omitted). The burden then shifts back to the plaintiff to show that the defendant's actions were pretextual and instead were the result of unlawful discrimination or retaliation. *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). The ultimate burden remains at all times with the plaintiff. *Banigo v. Bd. of Educ. of Roosevelt Union Free Sch. Dist.*, No. 06-4792, 2009 WL 577974, at *4 (E.D.N.Y. Mar. 4, 2009).

I.    **Choi Lacks Sufficient Evidence to Establish a Prima Facie Case of FMLA Retaliation.**

Count I: FMLA Retaliation (Against Ferrellgas)

To establish a prima facie case for FMLA retaliation, Choi must show that: (i) she participated in a protected activity under the FMLA known to Ferrellgas; (ii) she was qualified for her position; (iii) she suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F. 3d 165, 167 (2d. Cir. 2004).

A.    **Choi Lacks Sufficient Evidence Demonstrating that She Was Asked to Stay Home for Two Weeks With Pay and Subsequently Transferred from her Import Manager Position for Exercising Rights Under the FMLA.**

Choi contends Ferrellgas unlawfully retaliated against her when she was asked to stay home from work with pay for two weeks and subsequently transferred her from the Import Manager position because she was planning to take maternity leave. Choi's claim fails on the third and fourth elements of her prima facie case. These were not adverse employment actions and she lacks evidence that such actions were taken in retaliation for planning to take FMLA leave.

1.    *Choi lacks sufficient evidence to show that she suffered an adverse employment action.*

An adverse employment action is a material and significant change in the terms and conditions of employment such as termination, a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). The action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 660 (2d Cir. 2000).

a.    Choi being asked to stay home for two weeks with pay is not an adverse employment action.

Choi's two weeks away from work did not cause any short-term or long-term consequences, nor did it result in any material change in the terms and conditions, benefits or responsibilities of her employment. Choi did not lose any employment benefits stemming from her two-week cooling off period, including her entitlement to FMLA leave for the birth of her child. Choi received her full rate of pay while away, was not deducted any vacation time and kept the same salary and career level after returning to work. (SOF, ¶¶ 64, 65).

b.    Choi's transfer from the Import Manager position to a new position is not an adverse employment action.

Choi also lacks sufficient evidence showing that her transfer constitutes an adverse employment action. A mere alteration of job responsibilities does not satisfy this element of her prima face case. *Galabya*, 202 F.3d at 640; *see also Fraser v. Fiduciary Trust Co. Intern.*, 04 Civ. 6958, 2009 WL 2601389, at *6 n.7 (S.D.N.Y. Aug. 25, 2009) (noting that relieving plaintiff of his responsibility from a client newsletter did not constitute an adverse employment action). As the Supreme Court noted, "a 'bruised ego,' a 'demotion without change in pay, benefits, duties, or prestige,' or 'reassignment to [a] more inconvenient job' are all insufficient to constitute a tangible or material adverse employment action." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *Ragusa v. Malverne Union Free Sch. Dist.*, 652 F. Supp. 2d 275, 284, n. 4 (E.D.N.Y. 2009) (citing *Ellerth*).

Choi cannot show her new position came with less pay, less responsibilities, or less opportunities for career advancement within Ferrellgas. Indeed, Choi's salary and career level remained the same. (SOF, ¶ 65). Choi also lacks evidence showing that her new responsibilities, although altered, were significantly diminished. Guadagno created this position for Choi because

he believed it would allow her to capitalize on her experience with the company. (SOF, ¶ 80). He considered it to be valuable for Ferrellgas's operations. (SOF, ¶ 81). Instead, Choi concludes that the new position required minimal work without contact from other Ferrellgas employees. But Choi bases this on her own subjective belief, which does not create a genuine issue as to whether she actually suffered an adverse employment action. *See, e.g., Bruder v. Jewish Bd. of Family & Children's Servs.*, No. 10-CV-5951, 2013 WL 789231, at *6 (E.D.N.Y. Mar. 4, 2013) (no adverse employment action where plaintiff "felt" the alleged change in work assignment was below her); *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-CV-2101, 2012 WL 1077677, at *12 (E.D.N.Y. Mar. 30, 2012) (no adverse employment action where plaintiff "failed to indicate in any way how her position as a regular teacher is less prestigious or how she would be less eligible for advancements in a regular teacher position" but "merely state[d] that it was a 'step down'"). Choi lacks evidence showing her new position with the same pay and benefits was so diminished as to be an adverse employment action.

> 2.     *Choi lacks sufficient evidence to show the circumstances give rise to an inference of retaliation.*

Choi also cannot establish that Ferrellgas's actions occurred under circumstances giving rise to an inference of retaliation. To establish such an inference, Choi must show retaliatory intent or a causal nexus between the FMLA-protected activity and the adverse employment action. *Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York*, 107 F. Supp. 3d 323, 328 (S.D.N.Y. 2015). This can be shown: directly through retaliatory animus toward Choi; indirectly through evidence such as disparate treatment of similarly-situated employees; or by temporal proximity. *Id*.

a.   <u>Choi lacks a direct showing of retaliatory animus.</u>

Choi cannot establish that Guadagno asked her to stay home and transferred her to a new position because she planned to take FMLA leave. Choi admits that Guadagno never expressed any concerns about her being absent from work for doctor appointments. (SOF, ¶ 62). Choi also admits that nobody at Ferrellgas made any comments that she thought indicated they were upset or concerned about her pregnancy. (SOF, ¶ 63).

b.   <u>Choi lacks sufficient evidence showing disparate treatment.</u>

Choi cannot establish Ferrellgas treated her less favorably than a similarly-situated employee. To show disparate treatment, "the individuals with whom [plaintiff] attempts to compare herself must be 'similarly situated in all material respects.'" *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 410 (S.D.N.Y. 2006) (internal citations omitted). While the circumstances need not be identical, they must share a sufficient amount of employment characteristics to be considered similarly situated which may include similarities in education, seniority, performance, and work responsibilities. *Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F. Supp. 2d 377, 383-84 (S.D.N.Y. 2002).

Choi cannot identify any similarly-situated employee—whether a manager or other employee who was (or would have been) treated differently than her. Without any such evidence, Choi fails to show disparate treatment as an inference of retaliation.

c.   <u>Choi lacks evidence of temporal proximity.</u>

At the prima facie stage, the temporal proximity between a protected activity and an adverse employment action can establish the requisite inference. *Risco v. McHugh*, 868 F. Supp. 2d 75, 114 (S.D.N.Y. 2012). "The cases that accept mere temporal proximity . . . to establish a prima face case uniformly hold that the temporal proximity must be 'very close.'" *Id*. at 113-14

(S.D.N.Y. 2012) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)). While the "Second Circuit . . . has not drawn a bright line to define the outer limits" of the temporal relationship, courts "within the Second Circuit have consistently held that the passage of more than two to three months . . . militates against an inference of causation." *Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 319 (S.D.N.Y. 2012); *see also Ruhling v. Tribune Co.*, No. 04 Civ. 2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) ("a passage of two months between the protected activity and the adverse employment action seems to be the dividing line."); *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (collecting cases).

Choi cannot show a close enough temporal relationship here. Choi first cannot logically rely on the contention that her FMLA leave request was the reason Ferrellgas asked her to stay home for two weeks and then transferred her position. Choi requested maternity leave only after she returned in January 2016 and began working in her new position. (SOF, ¶ 68-69). Choi also cannot show that, in the two- or three-month period preceding the December 18, 2015 meeting— or even during her entire pregnancy up to that point—she engaged in any other FMLA-protected activity.

          d.    <u>Choi lacks sufficient evidence of any other circumstance that could give rise to an inference of retaliatory intent.</u>

The record is devoid of any evidence suggesting that Guadagno's actions in December 2015 were taken as a result of Choi planning for maternity leave. Choi admits Guadagno never made any comments to her indicating he was concerned or upset about her being pregnant. (SOF, ¶ 61). Choi also admits Guadagno never expressed any concerns about Choi being absent from work for doctor appointments. (SOF, ¶ 62). Nobody else at Ferrellgas made any comments that she thought indicated they were upset or concerned about her pregnancy. (SOF, ¶ 63). Therefore,

Choi cannot meet this element of her prima facie case and Ferrellgas is entitled to summary judgment.

> 3.    *Ferrellgas had legitimate, non-retaliatory reasons for asking Choi to stay home for two weeks with pay and then transferring her into a new position and Choi lacks any evidence of pretext.*

Even if Choi could establish a prima facie case, Ferrellgas offers a legitimate reason for taking such actions against her: Ferrellgas could not afford to lose other employees because of Choi's confrontational attitudes towards them and the way she managed people. *See, e.g., Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 508 (S.D.N.Y. 2010) (multiple, independent, and documented accusations of unprofessional conduct made against plaintiff adequately support defendant's stated rationale for demoting and terminating plaintiff). Guadagno had experienced Choi's behavior towards others since day he started working with her in 2013. (SOF, ¶¶ 15). To Guadagno, Choi's management style was very difficult for him to manage through. (SOF, ¶ 16). During her performance reviews, Guadagno would usually spend his time with Choi discussing her development goals and to break down the communication barriers between the import department and sales support teams. (SOF, ¶¶ 8-9, 12).

This was also not the first time Guadagno tried to transfer Choi out of the Import Manager position. In March 2015, Guadagno proposed a Global Supply Chain initiative which would have merged Ferrellgas's Import and Sales departments into one "Global Supply Chain" team. (SOF, ¶¶ 15, 18). Part of this initiative would have reassigned the managers of the Import and Sales department—Choi and Lauren Buccello—and made an outside hire to manage the team because Guadagno observed constant struggle between Choi and Buccello. (SOF, ¶¶ 19, 22). Guadagno therefore proposed this initiative as a way to preserve both managers' historical knowledge of the business while also moving them away from two competing departments.

(SOF, ¶¶ 20, 22-24). Guadagno's proposal would have moved Choi to a role where Choi could be managing "process" rather than managing people. (SOF, ¶ 21). Although the initiative was approved, Ferrellgas ultimately did not have the money to fill the outside managing position. (SOF, ¶ 25). The business structure stayed in place and Choi remained the Import Manager. (SOF, ¶ 25).

By the Fall of 2015, Guadagno believed Choi's behavior was becoming more problematic. In her September 2015 review, Guadagno lowered her "personal leadership" score, noting that Choi could lead the import department "if she can find a way to rise above feeling victimized by business issues and other peoples (sic) mistakes." (SOF, ¶ 26). By that time, Guadagno believed Choi was progressively becoming more accusatory towards others concerning work issues, which made other employees defensive. (SOF, ¶ 27).

Choi's behavior persisted in the following months. For one example, Choi made confrontational remarks towards Ferrellgas Vice President of Global Sales, Jeff Lynch, following an inquiry he made in November 2015 concerning the status of a product order. (SOF, ¶ 32). Following Lynch's inquiry, Buccello asked Choi whether she was familiar with Target's booking system. (SOF, ¶ 33). Choi answered that she was not familiar, to which Lynch replied "Liza: That is a bit surprising given that we have been shipping them for the past 7 years. But, OK." (SOF, ¶ 33). Choi then responded:

> Good morning Jeff, I am sorry you didn't know we don't make booking in this office the last 7 years. What surprise me more is no one made it clear to EB they can ship while waiting for approval yet all 3 of you have been communicating with EB & Target (even outside of the daily), is this ok? From what I have been reading from the daily they kept asking for approve so they can ship. Anyway let's see what they sau on Monday. Enjoy the rest of the days off.

(SOF, ¶ 33). After this exchange, Lynch forwarded the e-mail to Guadagno and stated:

> CANNOT wait for the day when I have never have to have any interaction with her EVER again. She is #1A on that list with FBL.

(SOF, ¶ 33). Guadagno talked with Choi and told her to "tone it down." (SOF, ¶ 34). Choi, however, saw nothing wrong with her e-mail even after Guadagno's counseling and testified she would not have changed anything about she handled this situation with Lynch. (SOF, ¶ 35).

In another instance, Guadagno admonished Choi concerning a "Nasty Daily point" that she wrote in an e-mail exchange with one of Ferrellgas's vendors in November 2015. (SOF, ¶ 36). The e-mail included a bullet list of items, one of which stated: "In the future, please always provide the information we asked to avoid making our customer wait for it." (SOF, ¶ 36). The vendor complained that "there shouldn't be points like this on the Daily." (SOF, ¶ 36). Guadagno then forwarded the e-mail exchange to Choi and asked who added the Daily item. (SOF, ¶ 37). Choi responded: "I did. And they wasted our time. They need to answer the question. Rob needed the answer." (SOF, ¶ 37). Guadagno replied:

> I understand that they didn't answer the point and that will happen from time to time, But we need to be able to demonstrate that we have turned the corner on the old ways of doing things. The nasty daily points, emails, and verbal jabs were becoming a problem for Mr. BBQ prior to the merger and it is a major problem in our current culture with Blue Rhino. This daily point and the email you sent to Jeff yesterday are counterproductive and not what is expected of you as a manager. We have talked many times about this issue.
>
> Honestly you worry about them wasting your time, but this is becoming a larger burden for our Senior management team. We should not be spending so much time talking about the way you conduct business. I can't keep defending this behavior as being stressed and over worked, and some point it has to stop!

(SOF, ¶ 37). At the end of the exchange, Guadagno again told her to "[t]one it down." (SOF, ¶ 37). Choi did not understand what was confrontational about her e-mail and did not agree with Guadagno. (SOF, ¶¶ 39-41). Again, Choi would not have changed anything about how she handled this situation. (SOF, ¶ 42).

Despite Guadagno's continued discussions with Choi, her confrontational attitude did not improve. In December 2015, two employees under Choi's supervision—Mila Peralo and MaryBeth Power—came to Guadagno. (SOF, ¶ 43). Guadagno believed both were very upset and after listening to them believed that Choi "was at this point getting unbearable." (SOF, ¶ 44). These December conversations caused Guadagno to fear Ferrellgas was going to lose employees during the company's busy season. (SOF, ¶¶ 47, 49). He believed that if employees left, the Import Department "wouldn't have been able to function." (SOF, ¶ 48).

By December 18, 2015, Guadagno also knew Choi was well aware of his concerns about her interactions with others, but she was unable or unwilling to change them. (SOF, ¶ 46). Ultimately, Guadagno felt that removing Choi's manager role was necessary to maintain the functionality of the Import Department. (SOF, ¶¶ 47-48).

Choi lacks evidence that she was asked to stay home for two weeks and then transferred from the Import Manager position because she planned to take maternity leave. Nothing indicates that Ferrellgas manufactured this series of events as a pretext to take such actions against her. The record demonstrates Choi's confrontational behavior towards other employees, and that she was unwilling or unable to change. Despite her behavior, Guadagno still wanted to keep Choi with Ferrellgas, but believed that the only way to do so while also keeping other employees was to limit Choi's interactions with them.

**B.     Choi Lacks Sufficient Evidence Demonstrating that Ferrellgas Eliminated her Position for Exercising Rights Under the FMLA.**

Choi contends Ferrellgas eliminated her position because she took maternity leave. Choi's claim fails because she lacks evidence that the circumstances involving her termination give rise to an inference of retaliation. Regardless, Ferrellgas's financial difficulties was the real

reason for eliminating her position and Choi lacks evidence showing that this reason was pretextual.

       1.    *Choi lacks sufficient evidence to show that the circumstances give rise to an inference of retaliation.*

Choi also lacks the requisite causal connection showing her maternity leave was in any way related to Ferrellgas's decision to eliminate her position.

       a.    <u>Choi lacks a direct showing of retaliatory animus.</u>

Choi cannot point to any evidence establishing that Ferrellgas or Guadagno harbored a retaliatory animus when her job was eliminated. Indeed, Choi admits that neither Guadagno nor anyone at Ferrellgas made any comments indicating they were upset or concerned about her pregnancy. (SOF, ¶¶ 62, 63). Choi also lacks evidence of any comments made to her or about her FMLA leave.

       b.    <u>Choi lacks sufficient evidence of disparate treatment.</u>

Choi cannot identify any similarly-situated employee who was or would have been treated differently than her. Without any such evidence, Choi cannot show disparate treatment to satisfy the requisite inference of retaliation.

       c.    <u>Choi lacks evidence of a sufficient temporal relationship.</u>

Choi submitted her request for FMLA leave only a day or two after returning from work on January 6, 2016. (SOF, ¶¶ 65, 68). Her position was not eliminated until May 20, 2016. (SOF, ¶ 104). This five-month gap in time is too attenuated to establish temporal proximity.  Therefore, Choi cannot meet this element of her prima facie case and Ferrellgas is entitled to summary judgment.

**C.     Ferrellgas Had a Legitimate, Non-retaliatory Reason for Eliminating Choi's Position and Choi Lacks Sufficient Evidence That This Reason was Pretextual.**

Choi's claim that she was terminated for taking FMLA leave fails because Ferrellgas had a legitimate, non-retaliatory reason for doing so: Ferrellgas had been experiencing a downturn in its business and severe financial difficulties at the time, and ultimately eliminated Choi's position as part of a reduction to its company's workforce. (SOF, ¶¶ 85, 95-96, 101-102, 104). Courts in the Second Circuit recognize that a bona fide reduction-in-force ("RIF") constitutes a legitimate, non-discriminatory reason for eliminating an employee's position. *See, e.g., Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1226 (2d Cir. 1994) (holding that a firm's decision to implement a reduction-in-force "to meet its budgetary goals" during "a business downturn" was a legitimate reason for terminating an employee). *Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 548 (E.D.N.Y. 2014) ("[a] bona fide reduction in workforce is a legitimate nondiscriminatory reason for terminating an employee.").

In 2016, Ferrellgas was experiencing a severe financial crisis company-wide, evidenced by severe debts, problems satisfying covenants with banks, and a dramatic increase in Ferrellgas's debt-to-equities after it made some acquisitions that negatively impacted the company, as well as a warm winter that reduced consumer demand for propane. (SOF, ¶ 85). Ferrellgas posted a net loss of $665.4 million in fiscal year 2016. (SOF, ¶ 86). Given these difficulties, Ferrellgas implemented multiple layoffs in every division and its corporate headquarters. (SOF, ¶ 88). Even now, Ferrellgas employees have not received raises for nearly two years, and some for three years. (SOF, ¶ 89). Including Choi, roughly 100 to 150 employees were subject to a RIF from the spring to the fall of 2016. (SOF, ¶¶ 87, 93).

In Spring of 2016, Guadagno participated in an annual forecasting meeting to finalize the budget for the upcoming fiscal year, which runs from August 1 through July 31. (SOF, ¶ 90).

Given the company's financial struggles, unless a position at Ferrellgas was critically needed on a daily basis, the position needed to be eliminated. (SOF, ¶ 92). Division or local managers like Guadagno were responsible for determining which positions were considered essential. (SOF, ¶ 94). This occurred all across the company. (SOF, ¶ 92).

At this meeting, after exhausting all other SG&A expense opportunities, it became clear to Guadagno that payroll needed to be cut. (SOF, ¶ 95). While he did not want to let Choi go, Guadagno ultimately made the decision that RIFs had to be made and decided to eliminate Choi's position. (SOF, ¶ 96). He intended Choi's new Import Operations Expense Auditor position to be permanent but believed the position was more "after the fact audit related," and that other jobs needed to be kept to continue day-to-day operations. (SOF, ¶¶ 99-100). Guadagno viewed this as part of a company-wide cost cutting measure. (SOF, ¶ 102).

Choi cannot point to any evidence to show her maternity leave played any factor in her RIF. Choi was not the only employee in her office subject to a RIF around the time she was laid off. Indeed, at least two male employees in the Melville office were subject to a RIF in 2016. (SOF, ¶ 98). There is no evidence that either of these employees took FMLA leave before. Further, Choi previously requested and took FMLA leave in March 2014 (under Guadagno's supervision) without any adverse consequences. (SOF, ¶ 105). Choi also lacks any evidence indicating that she was treated any differently after returning from her 2014 pregnancy. Choi lacks evidence of FMLA retaliation and Ferrellgas is entitled to summary judgment.

II.     **Choi Lacks Sufficient Evidence for a Reasonable Jury to Find that Ferrellgas Unlawfully Discriminated Against Her in Violation of Title VII and the New York State Human Rights Law.**

<u>Counts II and IV: Title VII and NYSHRL Discrimination (Against Ferrellgas)</u>

As an initial matter, Choi's NYSHRL claims are subject to the same burden-shifting analysis applied to claims under Title VII. *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010); *see also Sowemimo v. D.A.O.R. Security, Inc.*, 43 F. Supp. 2d 477, 484 (S.D.N.Y. 1999) (noting that claims under Title VII and NYSHRL "can be examined identically for summary judgment purposes"). Accordingly, Choi's NYSHRL claims are "subsumed within the Title VII analysis." *Lucas v. S. Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 146 (E.D.N.Y. 1998); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993).

To make out a prima face case of discrimination under Title VII and NYSHRL, Choi must show that: (i) she is a member of a protected class; (ii) she satisfactorily performed her job duties; (iii) she was subject to an adverse employment action; and (iv) such adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Morrissey v. Symbol Techs., Inc.*, 910 F. Supp. 117, 120 (E.D.N.Y. 1996).

Regarding Choi's allegations that she was asked to stay home for two weeks and then transferred from the Import Manager position, her claims fail on the third element of her prima facie cases because she was not subject to any adverse employment actions. Regarding Choi's allegations that Ferrellgas ended her employment due to her gender or pregnancy, Choi's claims fail on the first and fourth elements of her prima facie cases because she cannot show: she was a member of a protected class at the time her position was eliminated or that the circumstances of her employment ending created an inference of discrimination. Even if Choi could have established a prima facie case, Ferrellgas offers legitimate, non-discriminatory reasons for taking

such actions against her and Choi cannot show that these reasons were pretextual. Accordingly, Ferrellgas is entitled to summary judgment.

**A.    Choi Lacks Sufficient Evidence to Show that Ferrellgas Asked Her to Stay Home With Pay for Two Weeks and Subsequently Transferred Her To a New Position Because of Her Gender or Pregnancy.**

*1.    Choi lacks sufficient evidence showing that she suffered an adverse employment action.*

For the same reasons discussed in pages 5-7 of this Memorandum (Section I.A.1), Choi lacks evidence showing that her two-week "cooling off" period and transfer from the Import Manager position into a new position constitutes an adverse employment action. Accordingly, Choi cannot make a prima facie case of discrimination under Title VII or NYSHRL and Ferrellgas is entitled to summary judgment.

*2.    Ferrellgas had a legitimate, non-discriminatory reason for asking Choi to stay home for two weeks with pay and then transferring her into a new position upon her return.*

For the same reasons discussed in pages 10-13 of this Memorandum (Section I.A.3), Ferrellgas had a legitimate, non-discriminatory reason for asking Choi to stay home for two weeks with pay and then subsequently transferring her from the Import Manager position: Ferrellgas feared Choi's behavior and interactions with others (which she was unwilling to change) would cause other employees to leave. Accordingly, Choi was placed in an appropriate role to limit those interactions and maintain the functionality of the Import Department.

Choi further lacks sufficient evidence that Ferrellgas's reasons were pretextual. In Title VII discrimination cases, an employer's reason for taking an adverse action cannot be proven to be pretextual unless it can be shown to be both "false *and* pretextual, and that the discrimination was the real reason." *Bain v Highdale Hotels, LP*, 2009 WL 10705912, at *9 (E.D.N.Y. July 7,

2009) (quoting *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995) (emphasis in *Quaratino*).

Nothing in the record demonstrates or even suggests that Choi's gender or pregnancy was the real reason—or even part of the reason—why she was asked to stay home for two weeks and transferred to a new position upon her return. Nothing suggests that Ferrellgas manufactured this series of events as a pretext to take such actions against her, let alone that they would not have done so but for her gender or pregnancy. Choi was not a victim of Title VII or NYSHRL discrimination and Ferrellgas is entitled to summary judgment.

**B.** **Choi Lacks Sufficient Evidence to Show that Ferrellgas Eliminated Her Import Operations Expense Auditor Position Because of Her Gender Or Pregnancy.**

      *1.* *Choi was not a member of the protected class for purposes of her pregnancy discrimination claim at the time her position was eliminated.*

In a pregnancy discrimination case, the protected class is "women affected by pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *Ingenito v. Riri USA, Inc.*, No. 11-CV-2569, 2013 WL 752201, at *8 (E.D.N.Y. Feb. 27, 2013). Whether a plaintiff is "affected by pregnancy, childbirth, or related medical questions" is determined on a case-by-case basis. *Helmes v. S. Colonie Cent. Sch. Dist.*, 564 F. Supp. 2d 137, 147 (N.D.N.Y. 2008). In this case, Choi lacks any evidence showing she was affected by pregnancy, childbirth, or a related medical condition at the time she was subject to a RIF. (SOF, ¶ 104).

A plaintiff does not need to be pregnant at the time of the alleged employment action to be a member of the protected class. *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 127 (E.D.N.Y. 2011). But "[w]hile some effects of pregnancy linger beyond the act of giving birth, at some point the female employee is no longer 'affected by pregnancy, childbirth, or related medical conditions.'" *Keller v. Great Lakes Collection Bureau, Inc.*, No. 02-CV-0719, 2005 WL

2406002, at *4 (W.D.N.Y. Sept. 29, 2005) (quoting *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 753 (E.D. Pa. 2002)). Status as a new parent alone is generally insufficient. *Id.* (citing *Piantanida v. Wyman Ctr., Inc.*, 116 F.3d 340, 342 (8th Cir. 1997)). Instead, the plaintiff "must demonstrate that the effects of her pregnancy continued to exist at the time she was [subject to the action], either in actual fact or in the thoughts and actions of those responsible." *Id.* at *4 (alteration in *Keller*) (quoting *Solomen*, 183 F. Supp. 2d at 754).

The record is devoid of any evidence demonstrating Choi had any issues with her pregnancy, childbirth, or other pregnancy-related medical condition by the time of her RIF. On January 8, 2016, Choi delivered a healthy baby with no medical complications. (SOF, ¶ 72). Choi had no medical issues after delivering her baby. (SOF, ¶ 73). Choi's RIF did not occur for more than four months after delivering her baby. (SOF, ¶ 104). There is no evidence suggesting that any medically-related conditions of her pregnancy existed or had developed at any point during those four months. Accordingly, Choi was no longer a member of the protected class at the time of her RIF and Ferrellgas is entitled to summary judgment.

2.  *Choi lacks sufficient evidence showing that her RIF occurred under circumstances giving rise to an inference of discrimination.*

Choi cannot demonstrate that her gender and pregnancy played any part in her RIF. Choi also lacks any evidence that she was treated less favorably because of her gender or pregnancy. Choi was previously pregnant in 2014 yet remained employed with Ferrellgas up until her RIF. (SOF, ¶¶ 4, 104-106). At least two other employees have been pregnant and gave birth while under Guadagno's supervision. (SOF, ¶ 107). Guadagno had no problem and never expressed any concerns about Choi or other women taking time off work or being pregnant. (SOF, ¶ 108).

Choi lacks evidence that Ferrellgas or Guadagno treated her male and non-pregnant counterparts more favorably. Choi cannot meet the fourth element of her prima facie case and Ferrellgas is entitled to summary judgment.

3. *Ferrellgas had legitimate, non-discriminatory reasons for eliminating Choi's position and Choi lacks sufficient evidence to show that those reasons were pretextual.*

For the same reasons discussed in pages 15-16 of this Memorandum (Section I.C), even if Choi could make a prima facie case of Title VII or NYSHRL discrimination, Ferrellgas still offers a legitimate, non-discriminatory reason for eliminating her position: Choi was part of a company-wide RIF and was laid off because of financial problems. Choi further lacks sufficient evidence that Ferrellgas's reasons for making her part of a RIF was pretextual. Choi points to nothing to suggest her RIF was in any way related to her gender or pregnancy. Choi cannot show she was a victim of Title VII or NYSHRL discrimination and Ferrellgas is entitled to summary judgment.

**III.   Choi Lacks Sufficient Evidence for a Reasonable Jury to Find that Ferrellgas Unlawfully Retaliated Against Her Because She Exercised Rights Protected by Title VII and the New York State Human Rights Law.**

Counts III and V: Title VII and NYSHRL Retaliation (Against Ferrellgas)

On January 24, 2016, while out on maternity leave, Choi sent Guadagno a Memorandum concerning their December 18, 2015 meeting, noting her pregnancy and questioning the timing of her removal from the Import Manage position. (SOF, ¶¶ 74-75). Choi now claims that Ferrellgas terminated her in retaliation for making a complaint. To establish her prima facie case, Choi must show that: (i) she engaged in a protected activity; (ii) Ferrellgas was aware of that activity; (iii) Ferrellgas took action against her; and (iv) a causal connection exists between the protected activity and the adverse action. *Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 499

(E.D.N.Y. 2012). Here, Choi cannot show the requisite causal connection between her pregnancy complaint and her RIF. Even if she could, Ferrellgas has a legitimate non-retaliatory reason for making her part of a RIF and Choi cannot show that such reasons were pretextual. Accordingly, Choi's claim fails and Ferrellgas is entitled to summary judgment.

**A.     Choi Lacks Sufficient Evidence to Show That Her Import Operations Expense Auditor Position Would Not Have Been Eliminated But For Any Complaints of Pregnancy Discrimination.**

*1.     Choi lacks sufficient evidence of a causal connection between her complaint and her job elimination.*

"[A] plaintiff alleging retaliation under Title VII [and the NYSHRL] must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Zann Kwan v. Andalex Grp.*, 737 F.3d 834, 845-46 (2d Cir. 2013)). A plaintiff can do this: directly through evidence of retaliatory animus; indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or by temporal proximity. *LaSalle v. City of New York*, 13-CV-5109, 2015 WL 1442376, at *6 (S.D.N.Y. Mar. 30, 2015).

a.     Choi lacks any direct evidence of retaliatory animus.

Choi cannot point to any direct evidence of animus. Choi admits there was no indication Guadagno or anyone else at Ferrellgas were upset about her comments expressing concerns about the timing of her removal and her pregnancy. (SOF, ¶¶ 83-84).

b.     Choi lacks evidence of disparate treatment.

Choi cannot point to any male or non-pregnant female counterpart who engaged in protected activity and yet was treated more favorably. Choi further lacks any other evidence for a reasonable juror to conclude that Ferrellgas would not have eliminated Choi's position had she not made those comments related to her pregnancy.

c. <u>Choi lacks evidence of a sufficient temporal relationship.</u>

Like in discrimination claims, a lapse of more than two or three months between protected activity and adverse action becomes too attenuated to establish the requisite causal connection in retaliation claims. *See, e.g., Chamberlin v. Principi*, 247 F. App'x. 251, 254 (2d Cir. 2007) (five-month interval between employee's complaint and reassignment was not close enough in time to establish prima facie Title VII retaliation claim). Choi sent Guadagno the Memorandum containing the comments on her pregnancy on January 24, 2016. (SOF, ¶¶ 74-75). She was part of a RIF on May 20, 2016, almost 5 months later. (SOF, ¶ 104). The near five-month gap is too far apart to establish the requisite causal element of her retaliation claims.

**B.   Ferrellgas Had Legitimate, Non-Retaliatory Reasons for Eliminating Choi's Import Operations Expense Auditor Position and Choi Lacks Sufficient Evidence to Show that Those Reasons were Pretextual.**

For the same reasons discussed in pages 15-16 of this Memorandum (Section I.C), Ferrellgas offers a legitimate, non-retaliatory reason for eliminating her position: Choi was part of a company-wide RIF because of financial difficulties. Choi further lacks sufficient evidence that her RIF was merely pretextual. Nothing suggests that her comments in the Memorandum were the actual or part of the reason that her position was eliminated.

**IV.   Choi's Claims Against Michael Guadagno Fail As a Matter of Law Because She Lacks Sufficient Evidence to Show An Underlying Claim for Discrimination or Retaliation.**

<u>Counts IV and V: NYSHRL Discrimination and Retaliation (Against Michael Guadagno)</u>

Choi asserts "aiding and abetting" theories against Guadagno under the NYSHRL, which makes it unlawful for any person "to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this [provision], or to attempt to do so." N.Y. Exec. Law § 296(6). However, an "aiding and abetting" theory "is only a viable theory where an underlying violation has taken place." *Petrisch v. HSBC Bank USA, Inc.*, No. 07-CV-3303, 2013 WL 1316712, at *21

(E.D.N.Y. Mar. 28, 2013); *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d

349, 368 (S.D.N.Y. 2012) (if corporate defendant's termination of plaintiff was not unlawful,

then individual supervisor cannot be held liable for it). Here, Choi's claims against Guadagno

fail because she lacks sufficient evidence of an underlying violation by Ferrellgas. Accordingly,

Guadagno is entitled to summary judgment.

## CONCLUSION

Liza Choi lacks sufficient evidence to convince a reasonable jury that her treatment at

Ferrellgas was because she had a baby, took FMLA leave, or complained about her transfer from

a position managing people. Choi's manager, Michael Guadagno, considered Choi to be a hard

worker and had a wealth of knowledge, but spent years counseling her that her treatment of

others was not appropriate. While Choi may disagree with Guadagno's perspective, Choi has no

evidence to dispute that Guadagno himself believed it and had counseled her about it in an

attempt to change her behavior. Choi likewise cannot dispute that employees reporting to her

came to Guadagno in December 2015 and that Guadagno was concerned that Choi's behavior

jeopardized the operations of her own department. Choi has no evidence that Guadagno was in

any way upset about her pregnancy or the time she would need off because of it; Guadagno had

long known she was pregnant, and Choi had no issues with Guadagno during a prior pregnancy

and leave.

Nor can Choi create any suggestion of discrimination or retaliation regarding the

elimination of her position. If Guadagno had wanted to fire her, he could have done so in

December 2015. But Guadagno wanted to retain her. While Choi complained about her transfer,

Choi has no evidence that Guadagno was in any way surprised or upset about Choi's complaints.

He had heard Choi disagree with him constantly when he voiced his concerns over the years—

this was nothing new. It is undisputed that Ferrellgas experienced unanticipated and severe financial issues in the Spring of 2016, which led to company-wide layoffs. Guadagno's undisputed desire to have the best of both worlds—Choi's hard work and knowledge without the interaction with others—was no longer feasible. Choi's refusal to make any effort to improve her interaction with others meant that Guadagno had to take her out of an outside-facing, day-to-day operations role and instead one that was more focused on data analysis and logistics. But this new role was a luxury that Ferrellgas could not afford, meaning that Guadagno had to make the difficult decision he tried to avoid in December 2015—eliminating Choi's position and thereby ending her employment at Ferrellgas. Choi lacks any evidence that Guadagno instead held some animus towards her because she was pregnant, took maternity leave, or because she complained about her transfer. Ferrellgas is entitled to summary judgment.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2019, I caused a true and correct copy of the *Memorandum of Law in Support of Defendants' Motion for Summary Judgment*, to be served via electronic mail addressed to the following counsel of record:

Tana Forrester
Troy Kessler
SHULMAN KESSLER LLP
534 Broadhollow Road, Suite 275
Melville, New York 11747
Phone: (631) 499-9100
Fax:     (631) 499-9120
E-mail:      tforrester@shulmankessler.com
                  tkessler@shulmankessler.com

<u>/s/ *Brendan M. Quinn*                        </u>
Attorney for Defendants